[No. B228882. Second Dist., Div. Three. Apr. 20, 2012.]

BRENDAN J. COLLINS et al., Plaintiffs and Appellants, v.
CITY OF LOS ANGELES, Defendant and Respondent.

142

**COUNSEL**

Law Offices of S. Chandler Visher, S. Chandler Visher; Law Offices of Matthew J. Witteman, Matthew J. Witteman; Law Offices of Bradley C. Arnold and Bradley C. Arnold for Plaintiffs and Appellants.

Carmen A. Trutanich, City Attorney, Gary G. Geuss, Chief Assistant City Attorney, Laurie Rittenberg, Assistant City Attorney, and Adena M. Hopenstand, Deputy City Attorney, for Defendant and Respondent.

OPINION

**CROSKEY, J.**—Brendan J. Collins and Greta F. Hunt, individually and on behalf of persons similarly situated, appeal a judgment awarding them part of the amounts billed by and paid to the City of Los Angeles (city) for emergency response costs. They also appeal a postjudgment order awarding attorney fees and costs payable to class counsel. Plaintiffs contend the trial court erred by (1) awarding prejudgment interest from the date of the parties' stipulation on the calculation of the amounts recoverable rather than the date of each class member's payment to the city; (2) ordering the city to pay only 60 percent of plaintiffs' reasonable attorney fees under Code of Civil Procedure section 1021.5 (section 1021.5), while requiring plaintiffs to pay the remaining 40 percent from their monetary recovery; (3) denying recovery for some of their claimed attorney and paralegal fees; and (4) allowing the city to retain unclaimed funds.

With respect to these four issues, we hold that (1) the amounts awarded were certain or capable of being made certain by calculation within the meaning of Civil Code section 3287, subdivision (a) on the date of each payment by a class member and that prejudgment interest therefore began to accrue on each payment date; (2) the trial court had the discretion to order part of plaintiffs' reasonable attorney fees to be paid by the city under section 1021.5 and part of those fees to be paid from plaintiffs' monetary recovery, and plaintiffs have shown no abuse of discretion in such apportionment; (3) the court abused its discretion by denying fees claimed for certain tasks; and (4) the trial court did not abuse its discretion by allowing the city to retain unclaimed funds.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. General Background

The city billed persons who had been arrested for driving under the influence of alcohol or drugs for the city's emergency response costs, pursuant to Government Code section 53150.[1] The police department created a billing statement, known as a response reimbursement report, for each incident stating the time spent by police officers responding to the incident and identifying the officers. The report set forth a dollar amount for the time spent by each officer, a total dollar amount for the incident and a "total

---

[1] Government Code section 53150 states that any person whose negligent operation of a motor vehicle while under the influence of alcohol or any drug causes an incident resulting in an appropriate emergency response, and any person whose intentionally wrongful conduct causes an incident resulting in an appropriate emergency response, is liable for the costs of an emergency response by a public agency.

requested" amount not exceeding $1,000.[2] The dollar amount stated for each officer was calculated based on an hourly rate including salary, fringe benefits, and overhead costs.

### 2. *Complaint and Other Pretrial Proceedings*

Collins filed a class action complaint against the city on March 23, 2005, seeking to recover part of the amounts billed by and paid to the city for emergency response costs. Collins and Hunt filed a third amended complaint on December 1, 2006, alleging that the city improperly demanded and collected amounts for fixed costs that did not arise directly from an emergency response to an incident.

The parties filed a joint stipulation on February 11, 2008, on the city's liability and calculation of the amounts recoverable. Under the terms of the stipulation, the city agreed not to challenge plaintiffs' right to recover amounts paid for overhead costs, while plaintiffs agreed not to seek recovery of amounts paid for fringe benefits. The parties defined recoverable overhead costs by reference to certain categories of costs set forth in a document attached to the stipulation entitled "Cost Allocation Plan 26." They agreed that the exact percentage of the total costs claimed by the city for each incident attributable to overhead costs varied from year to year and was subject to proof or stipulation.[3] They agreed that individuals whose payment to the city included any overhead costs were entitled to recover that amount, subject to the city's defenses.[4]

The trial court filed an order on February 22, 2008, certifying a class of persons who were billed by the city for emergency response costs associated

---

[2] Government Code section 53155 formerly limited a person's liability for emergency response costs to $1,000 per incident. (Stats. 1986, ch. 1112, § 1, p. 3908.) The current limit is $12,000. (Gov. Code, § 53155, as amended by Stats. 2004, ch. 51, § 1, p. 275.) The city continued to limit the "total requested" to $1,000 after 2004 despite the increased limit.

[3] We will refer to the percentage of the total costs incurred by the city for each incident attributable to overhead costs as the "overhead cost percentage."

[4] The overhead cost percentage is used to calculate the amount of overhead costs paid by each plaintiff, which is the amount recoverable by each plaintiff pursuant to the February 2008 stipulation. If the total costs claimed by the city for an incident did not exceed $1,000, the city billed the total costs to the plaintiff. In those circumstances, the amount of overhead costs paid equals the overhead cost percentage of the amount paid to the city. If the total costs claimed by the city for an incident exceeded $1,000, however, the city billed the plaintiff only $1,000. The parties agreed in the stipulation to allocate overhead costs first to excess costs not billed to the plaintiff. As a result, the $1,000 billed to the plaintiff is deemed to include overhead costs only to the extent that the overhead costs for an incident (i.e., the overhead cost percentage of the total costs claimed by the city) exceed the excess costs not billed to the plaintiff. The February 2008 stipulation stated the example that if the overhead cost percentage was 50 percent and the city claimed total costs of $2,000, billed the plaintiff $1,000 and the plaintiff paid that amount, the plaintiff would be entitled to no monetary recovery.

with an arrest for driving under the influence during a specified period of time. The court found that plaintiffs' claims were for the specific recovery of property and that the Government Claims Act (Gov. Code, § 900 et seq.) therefore was inapplicable. The city petitioned this court for a writ of mandate, challenging the determination that the Government Claims Act was inapplicable. We concluded that plaintiffs' claims were for "money or damages" within the meaning of Government Code section 905 and that the Government Claims Act therefore applied. (*City of Los Angeles v. Superior Court* (2008) 168 Cal.App.4th 422, 425 [85 Cal.Rptr.3d 560].) The trial court modified the class definition accordingly.

### 3. *Trial and Judgment*

The parties filed a joint statement of issues to be decided by the trial court, a joint stipulations of facts, trial briefs and declarations in March and April 2010. The city agreed to withdraw its affirmative defense of accord and satisfaction in exchange for $26,500 to be paid from unclaimed funds due to class members. The parties stipulated to an overhead cost percentage for each year at issue. Although the actual percentage of total costs incurred by the city attributable to overhead costs varied depending on the rank of the officers involved, the parties stipulated to an average percentage applicable to all police officers for each year at issue.

Plaintiffs argued that prejudgment interest on the amounts to be awarded under the judgment accrued on the date of each payment to the city. The city argued that prejudgment interest accrued on the date of the parties' stipulation on overhead cost percentages, the date of the February 2008 stipulation on the city's liability and calculation of the amounts recoverable, or the date of an appellate court opinion, *California Highway Patrol v. Superior Court* (2006) 135 Cal.App.4th 488 [38 Cal.Rptr.3d 16], clarifying what amounts were properly billed by the city.

The trial court issued a tentative ruling on July 6, 2010, and filed a judgment on August 30, 2010, finding that eligible class members were entitled to refunds in the amounts stated on exhibits attached to the judgment. The judgment awards prejudgment interest on the amounts due at the rate of 7 percent from the date of filing of the February 2008 joint stipulation. The total amount to be paid to class members under the terms of the judgment, including principal and prejudgment interest, is $464,218. Of that amount, the principal amount of $22,812 is payable to class members who had not been located as of the date of the judgment. The judgment also includes exhibits

listing class members who did not pay the city's bill or paid less than the amount billed. Those exhibits state the amounts by which the outstanding debts of class members are reduced, totaling $896,185.

The judgment states that the city must administer the refunds and must report to the trial court every 60 days on such administration. It states that amounts due class members who cannot be located despite reasonable efforts and the total amount of checks returned as undeliverable and checks that are not cashed will be retained by the city after the earlier of one year from the date of entry of judgment or entry of an order that no further efforts need to be made to locate class members.

### 4. Attorney Fee Award

Plaintiffs moved for an award of attorney fees and costs payable to class counsel under section 1021.5 and the common fund doctrine. They requested a lodestar of $634,761 in attorney fees payable by the city under section 1021.5. They also requested an additional $150,000 as an enhancement for delay, contingency risk and other factors, payable from plaintiffs' recovery under the common fund doctrine. They also sought $13,131 in costs payable by the city plus $4,961 in costs payable from the recovery.

Plaintiffs argued that the judgment created a $464,218 class restitutionary fund and also resulted in the reduction of approximately $896,000 in emergency response costs charged to class members not receiving a refund. They argued that the total monetary value of the judgment was over $1.36 million. Plaintiffs argued that the existence of a common fund did not preclude an award of fees under section 1021.5.[5] They argued that because their monetary recovery was less than their requested lodestar fees, those fees should be paid by the city under section 1021.5 rather than from the common fund. Plaintiffs did not specifically address the issue of apportionment of their lodestar fees between the city and the class fund.

The city argued in opposition that the requested lodestar amount was excessive. The city also argued that the judgment did not create a common fund and provided no monetary benefit to class members not receiving a refund, and that plaintiffs' counsel were not entitled to a fee enhancement.

---

[5] When a successful litigant's efforts result in the creation of a fund from which others derive benefits, the fund is known as a "common fund." (*Serrano v. Priest* (1977) 20 Cal.3d 25, 35 [141 Cal.Rptr. 315, 569 P.2d 1303].)

The city did not address plaintiffs' argument that the lodestar amount should be paid by the city rather than paid from the recovery and did not argue that part of the fees should be paid from the recovery.

The city filed a declaration by Gerald G. Knapton, an attorney, who stated that he was an expert in the reasonableness of attorney fees. He stated his opinion that the attorney time claimed by plaintiffs was excessive and included administrative tasks that should not be included. He provided a detailed billing analysis indicating, among other things, entries that included attorney and paralegal time for administrative tasks and duplicative work. He stated that the entries including time for administrative tasks represented a total of 122 hours and fees totaling $38,482. He also stated that the claimed average hourly rate of $483 per attorney or paralegal was unreasonable and should be reduced to $300, and that no paralegal time should be included unless plaintiffs established that the individuals were qualified as paralegals under Business and Professions Code section 6450.

The trial court filed an order on September 23, 2010, stating that the city did not meaningfully dispute plaintiffs' right to an attorney fee award under section 1021.5. The order states, "The Court has eliminated the administrative sums per the chart attached to the declaration of Gerald G. Knapton. His declaration also contains a chart of duplicative sums in the amount of $37,189. The Court has reviewed the chart and finds that 50% of that amount ($18,594) should be deducted from the claim fees." Accordingly, the court found that the requested lodestar of $634,761 should be reduced to $577,691.[6] The court awarded a total of $577,691 in attorney fees and $9,867 in costs.

The trial court denied plaintiffs' request for a fee enhancement, stating among other things that the requested lodestar amount exceeded the approximately $464,000 payable to class members under the judgment and that the public benefit resulting from the litigation was small. The court stated that if fees were calculated on a contingency basis, the amount would be less than the lodestar. The court stated that a standard contingency fee is less than 40 percent and that 40 percent of the approximately $464,000 recovery is $185,600. The court stated that the claimed $896,000 benefit to class members not receiving a refund was uncertain and that a reasonable contingency fee for that amount would be 20 percent, or $179,200, yielding a total contingency fee of only $364,800.

---

[6] The trial court reduced plaintiffs' requested lodestar of $634,761 by $18,594 for duplicative work and $38,476 for administrative tasks.

The order states further: "The class members receiving monetary refunds are obtaining direct benefits from the lawsuit and, therefore, should pay 40% of the fees and costs—i.e., 40% of the fees and costs should be paid from the class restitution fund. City must pay the remainder of the fees and costs per Code of Civil Procedure section 1021.5." Thus, the trial court awarded $346,615 in attorney fees and $5,920 in costs payable by the city under section 1021.5 and $231,076 in attorney fees and $3,947 in costs payable from the recovery.

### 5. *Appeal*

Plaintiffs timely appealed the judgment and the postjudgment order awarding attorney fees.

## CONTENTIONS

Plaintiffs contend (1) they are entitled to prejudgment interest accrued from the date of each class member's payment to the city rather than the date of the parties' February 2008 stipulation; (2) the trial court erred by ordering the city to pay only 60 percent of plaintiffs' reasonable attorney fees under section 1021.5 while requiring plaintiffs to pay the remaining 40 percent from their monetary recovery; (3) the court erred by denying a fee recovery for 122 hours of attorney and paralegal work characterized as "administrative"; and (4) the city should not be entitled to retain all unclaimed funds.

## DISCUSSION

### 1. *Plaintiffs Are Entitled to Prejudgment Interest from the Date of Each Payment to the City*

A person who is entitled to recover damages that are "certain, or capable of being made certain by calculation" is also entitled to recover prejudgment interest on that amount from the date that the right to recover arose.[7] (Civ. Code, § 3287, subd. (a).) Damages are certain or capable of

---

[7] Civil Code section 3281 states, "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." Courts have broadly construed the term "damages" as used in Civil Code sections 3281 and 3287. (*Olson v. Cory* (1983) 35 Cal.3d 390, 402 [197 Cal.Rptr. 843, 673 P.2d 720] [held that wrongfully withheld salary and pension increases were damages under Civ. Code, § 3287]; *Sanders v. City of Los Angeles* (1970) 3 Cal.3d 252, 262 [90 Cal.Rptr. 169, 475 P.2d 201] [held that wrongfully withheld salary increases were damages under Civ. Code, § 3287]; *Benson v. City of Los Angeles* (1963) 60 Cal.2d 355, 365–366 [33 Cal.Rptr. 257, 384 P.2d 649] [held that wrongfully withheld pension payments were damages under Civ. Code, § 3287]; see *Todd Shipyards Corp. v. City of Los Angeles* (1982) 130 Cal.App.3d 222, 226 [181 Cal.Rptr. 652] [held that prejudgment interest was due on tax refunds]; *Leaf v. Phil Rauch, Inc.*

being made certain by calculation, or ascertainable, for purposes of the statute if the defendant actually knows the amount of damages or could calculate that amount from information reasonably available to the defendant. (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 919 [116 Cal.Rptr.3d 244].) In contrast, damages that must be determined by the trier of fact based on conflicting evidence are not ascertainable. (*Ibid.*) A legal dispute concerning the defendant's liability or the proper measure of damages, however, does not render damages unascertainable. (*Olson v. Cory, supra*, 35 Cal.3d at p. 402; *Uzyel, supra*, 188 Cal.App.4th at p. 919.)

Thus, the general rule is that damages are unascertainable if the amount of damages depends on disputed facts or the available factual information is insufficient to determine the amount; and damages are ascertainable if the only impediment to the determination of the amount is a legal dispute concerning liability or the measure of damages. On appeal, we independently determine whether damages were ascertainable for purposes of the statute, absent a factual dispute as to what information was known or available to the defendant at the time. (*KGM Harvesting Co. v. Fresh Network* (1995) 36 Cal.App.4th 376, 390–391 [42 Cal.Rptr.2d 286].)

The city's response reimbursement reports stated the total costs claimed for each incident based on the number of hours spent by the responding police officers multiplied by an hourly rate for each officer. The hourly rate for each officer included the pro rata cost of the officer's salary, fringe benefits and overhead costs. The city acknowledges that the hourly rate billed for each officer included an overhead cost component, the amount of which the city knew at the time of billing.[8] The city therefore could have determined at the time of billing the amount of overhead costs billed to each plaintiff and could have determined at the time of payment the amount of overhead costs paid by each plaintiff.

This is readily apparent for those incidents where the total costs claimed for the incident did not exceed $1,000. In those circumstances, the city billed

---

(1975) 47 Cal.App.3d 371, 376 [120 Cal.Rptr. 749] [allowed prejudgment interest on the amount paid under a contract in a rescission action]; see also *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 174 [96 Cal.Rptr.2d 518, 999 P.2d 706] [" 'Damages,' as that term is used to describe monetary awards, may include a restitutionary element . . . ."]; *Currie v. Workers' Comp. Appeals Bd.* (2001) 24 Cal.4th 1109, 1116, fn. 3 [104 Cal.Rptr.2d 392, 17 P.3d 749].) The city does not challenge the implied finding that the amounts payable under the judgment are damages within the meaning of Civil Code section 3287, so we have no need to consider that issue.

[8] We judicially notice the declaration of Laura Filatoff filed by the city on May 4, 2007, in support of its motion for summary judgment or summary adjudication, explaining the calculation of the hourly rates in the response reimbursement reports. (Evid. Code, § 452, subd. (d).)

the total costs to the plaintiff, so the amount of overhead costs claimed by the city equals the amount of overhead costs billed by the city. For those incidents where the total costs exceeded $1,000, the only impediment to determining the amount of overhead costs included in the amount billed by the city was uncertainty as to the allocation of overhead costs between the $1,000 billed to the plaintiff and the amount in excess of $1,000 that was not billed to the plaintiff. We conclude that this was a legal uncertainty concerning the measure of damages rather than a factual uncertainty. Such a legal uncertainty does not prevent damages from being ascertainable.

The parties' stipulation shortly before trial to use an overhead cost percentage for each year resulted in a small discrepancy between the amount awarded to each plaintiff and the actual amount of overhead costs paid by each plaintiff. Such a minor discrepancy does not render damages uncertain. (*Coleman Engineering Co. v. North American Aviation, Inc.* (1966) 65 Cal.2d 396, 408–409 [55 Cal.Rptr. 1, 420 P.2d 713]; *KGM Harvesting Co. v. Fresh Network, supra,* 36 Cal.App.4th at pp. 391–392.)

Contrary to the city's argument, the large discrepancy between the amount initially demanded by plaintiffs in this litigation and the amount awarded does not indicate that the damages were unascertainable. The discrepancy results from the resolution of legal disputes regarding the city's liability and not from the resolution of factual disputes arising from conflicting evidence or the lack of factual information needed to readily calculate damages. (*Uzyel v. Kadisha, supra,* 188 Cal.App.4th at p. 920; see *Wisper Corp. v. California Commerce Bank* (1996) 49 Cal.App.4th 948, 961–962 [57 Cal.Rptr.2d 141]; *Polster, Inc. v. Swing* (1985) 164 Cal.App.3d 427, 435–436 [210 Cal.Rptr. 567].)

Accordingly, we conclude that the amount of overhead costs paid by each plaintiff was ascertainable at the time of payment and that plaintiffs therefore are entitled to prejudgment interest accrued from the date of each payment.

   2.   *Plaintiffs Have Shown No Error in the Apportionment of Attorney Fees*

      a.   *Standard of Review*

We review an attorney fee award under section 1021.5 generally for abuse of discretion. Whether the statutory requirements have been satisfied so as to justify a fee award is a question committed to the discretion of the trial court, unless the question turns on statutory construction, which we review de novo. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175 [39 Cal.Rptr.3d 788, 129 P.3d 1]; *Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 158 [67 Cal.Rptr.3d 228].)

"An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise. [Citations.]" (*Mejia v. City of Los Angeles, supra*, 156 Cal.App.4th at p. 158.)

    b.   *Apportionment of Attorney Fees May Be Appropriate Under Section 1021.5*

Section 1021.5 authorizes an award of attorney fees "to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest," provided that three additional conditions are satisfied: "(a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."[9] (§ 1021.5.) All of the statutory requirements must be satisfied to justify a fee award. (*County of Colusa v. California Wildlife Conservation Bd.* (2006) 145 Cal.App.4th 637, 648 [52 Cal.Rptr.3d 1].)

" '[T]he private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in constitutional or statutory provisions, and that, without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible." Thus, the fundamental objective of the doctrine is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' [Citation.]" (*Graham v. DaimlerChrysler Corp.* (2004) 34 Cal.4th 553, 565 [21 Cal.Rptr.3d 331, 101 P.3d 140].)

The trial court here found that plaintiffs had satisfied the statutory requirements for an attorney fee award under section 1021.5, and the city does not dispute that finding. We therefore need not address the "successful party," "important right" and "significant benefit" requirements, which are satisfied. Instead, the dispute concerns the apportionment of the burden of paying

---

[9] Section 1021.5 codifies the private attorney general doctrine. (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 925 [154 Cal.Rptr. 503, 593 P.2d 200] (*Woodland Hills*).)

attorney fees between the city and plaintiffs. The court found that "class members receiving monetary refunds are obtaining direct benefits from the lawsuit and, therefore, should pay 40% of the fees and costs—i.e., 40% of the fees and costs should be paid from the class restitution fund. City must pay the remainder of the fees and costs per Code of Civil Procedure section 1021.5." The court's decision to apportion fees implicates the requirements that "the necessity and financial burden of private enforcement . . . are such as to make the award appropriate . . ." and "such fees should not in the interest of justice be paid out of the recovery, if any." (§ 1021.5.)

■ The necessity and financial burden requirement encompasses two issues: " ' "whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." ' [Citation.]" (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214–1215 [117 Cal.Rptr.3d 342, 241 P.3d 840] (*Whitley*).) Private enforcement is necessary only if public enforcement of the "important right affecting the public interest" (§ 1021.5) at issue is inadequate. (*Whitley, supra,* at p. 1215.) The trial court's finding that plaintiffs had satisfied the statutory requirements necessarily implies a finding that private enforcement was necessary, and its decision to apportion fees does not implicate this part of the necessity and financial burden requirement.

The financial burden of private enforcement concerns not only the costs of litigation, but also the financial benefits reasonably expected by the successful party. (*Whitley, supra,* 50 Cal.4th at p. 1215.) The appropriate inquiry is whether the financial burden of the plaintiff's legal victory outweighs the plaintiff's personal financial interest. (*Ibid.; Woodland Hills, supra,* 23 Cal.3d at p. 941.) An attorney fee award under section 1021.5 is proper unless the plaintiff's reasonably expected financial benefits exceed by a substantial margin the plaintiff's actual litigation costs. (*Whitley, supra,* at p. 1216.) The focus in this regard is on the plaintiff's incentive to litigate absent a statutory attorney fee award. " '[S]ection 1021.5 is intended to provide an incentive for private plaintiffs to bring public interest suits when their personal stake in the outcome is insufficient to warrant incurring the costs of litigation.' " (*Whitley, supra,* at p. 1221, quoting *Satrap v. Pacific Gas & Electric Co.* (1996) 42 Cal.App.4th 72, 79 [49 Cal.Rptr.2d 348] (*Satrap*).)

The successful litigant's reasonably expected financial benefits are determined by discounting the monetary value of the benefits that the successful litigant reasonably expected at the time the vital litigation decisions were made by the probability of success at that time.[10] (*Whitley, supra,* 50 Cal.4th

---

[10] *Whitley, supra,* 50 Cal.4th at page 1215, quoting *Los Angeles Police Protective League v. City of Los Angeles* (1986) 188 Cal.App.3d 1, 9 [232 Cal.Rptr. 697], stated, " 'The trial court must first fix—or at least estimate—the monetary value of the benefits obtained by the

at pp. 1215, 1220; *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1354 [39 Cal.Rptr.3d 550]; *Satrap, supra,* 42 Cal.App.4th at p. 77.) The resulting value must be compared with the plaintiff's litigation costs actually incurred, including attorney fees, expert witness fees, deposition costs and other expenses. (*Whitley, supra,* at pp. 1215–1216.) The comparison requires a " 'value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case. . . . [A] bounty will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' " (*Id.* at p. 1216, quoting *Los Angeles Police Protective League v. City of Los Angeles, supra,* 188 Cal.App.3d at pp. 9–10.)

■ Apportionment of attorney fees may be appropriate under section 1021.5 if the court concludes that the successful litigant's reasonably expected financial benefits were sufficient to warrant placing part of the fee burden on the litigant. (*Woodland Hills, supra,* 23 Cal.3d at p. 942 & fn.

successful litigants themselves. . . . Once the court is able to put some kind of number on the gains actually attained it must discount these total benefits by some estimate of the probability of success at the time the vital litigation decisions were made which eventually produced the successful outcome. . . . Thus, if success would yield . . . the litigant group . . . an aggregate of $10,000 but there is only a one-third chance of ultimate victory they won't proceed—as a rational matter—unless their litigation costs are substantially less than $3,000.' " Although these references to " 'the benefits obtained' " and " 'the gains actually attained' " seem to suggest that the monetary value of the benefits actually obtained is the starting point of the analysis (see *Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 382, 402 & fn. 6 [134 Cal.Rptr.3d 696] [so construing *Whitley* while noting that this approach "might be regarded as incongruous"]), other language in *Whitley* indicates that the analysis of reasonably expected financial benefit is based instead on the monetary value of the benefits that the successful litigant reasonably expected to obtain: "[I]n assessing the financial burdens and benefits in the context of section 1021.5, we are evaluating incentives rather than outcomes. ' "[W]e do not look at the plaintiff's *actual* recovery after trial, but instead we consider 'the estimated value of the case at the time the vital litigation decisions were being made.' " [Citation.] The reason for the focus on the plaintiff's expected recovery at the time litigation decisions are being made, is that Code of Civil Procedure section 1021.5 is intended to provide an incentive for private plaintiffs to bring public interest suits when their personal stake in the outcome is insufficient to warrant incurring the costs of litigation.' " (*Whitley, supra,* at pp. 1220–1221, quoting *Satrap, supra,* 42 Cal.App.4th at p. 79.)

*Satrap, supra,* 42 Cal.App.4th at page 79, held that the appropriate starting point for the analysis of reasonably expected financial benefits is the successful party's "realistic expected recovery, rather than the amount actually recovered." (See *Notrica v. State Comp. Ins. Fund* (1999) 70 Cal.App.4th 911, 955 [83 Cal.Rptr.2d 89] ["the court must look at the estimated value of the case when the critical litigation decisions were made, not the actual recovery after trial"]; *Beasley v. Wells Fargo Bank* (1991) 235 Cal.App.3d 1407, 1414–1416 [1 Cal.Rptr.2d 459], disapproved on another point in *Olson v. Automobile Club of Southern California* (2008) 42 Cal.4th 1142, 1151 [74 Cal.Rptr.3d 81, 179 P.3d 882] [calculating the "estimated value" of the case based on the actual recovery, noting that the actual recovery was approximately the same as the amount that the plaintiffs had reasonably hoped to receive].) To the extent that these authorities conflict with *Robinson v. City of Chowchilla, supra,* 202 Cal.App.4th at page 402, we decline to follow *Robinson.*

13;[11] *Saleeby v. State Bar* (1985) 39 Cal.3d 547, 574 [216 Cal.Rptr. 367, 702 P.2d 525]; see *Galante Vineyards v. Monterey Peninsula Water Management Dist.* (1997) 60 Cal.App.4th 1109, 1128 [71 Cal.Rptr.2d 1]; cf. *Whitley, supra,* 50 Cal.4th at p. 1226 [stating that apportionment of fees may be appropriate in connection with the "public interest" requirement].) In those circumstances, the court may award against the opposing party the difference between the full amount of reasonable attorney fees and an amount that the successful litigant could reasonably be expected to bear. (*Woodland Hills, supra,* 23 Cal.3d at p. 942, fn. 13.) Thus, an attorney fee award under section 1021.5 is not necessarily an all-or-nothing proposition.

Moreover, we believe that apportionment of attorney fees may be appropriate not only in connection with the "financial burden of private enforcement" (§ 1021.5, factor (b)), but also in connection with the requirement that "such fees should not in the interest of justice be paid out of the recovery, if any" (*id.,* factor (c)).[12] Thus, a court may deny or limit an attorney fee award under section 1021.5 pursuant to the "interest of justice" requirement if it determines based on the amount of the actual recovery and other circumstances that the fees should be paid in whole or in part from the recovery. (See *Rider v. County of San Diego* (1992) 11 Cal.App.4th 1410, 1422–1423 [14 Cal.Rptr.2d 885]; *Bank of America v. Cory* (1985) 164 Cal.App.3d 66, 90–91 [210 Cal.Rptr. 351].) The absence of any specific guideline in factor (c) and the reference to the "interest of justice" indicate that the Legislature

---

[11] "Although section 1021.5 does not specifically address the question of the propriety of a partial award of attorney fees, we believe that if the trial court concludes that plaintiffs' potential financial gain in this case is such as to warrant placing upon them a portion of the attorney fee burden, the section's broad language and the theory underlying the private attorney general concept would permit the court to shift only an appropriate portion of the fees to the losing party or parties. [Citation.]" (*Woodland Hills, supra,* 23 Cal.3d at p. 942.)

[12] *Woodland Hills* enumerated three criteria under section 1021.5: "[I]n terms of the statutory criteria, we must consider whether: (1) plaintiffs' action 'has resulted in the enforcement of an important right affecting the public interest,' (2) 'a significant benefit, whether pecuniary or nonpecuniary has been conferred on the general public or a large class of persons' and (3) 'the necessity and financial burden of private enforcement are such as to make the award appropriate.' Inasmuch as plaintiffs' action has produced no monetary recovery, factor '(c)' of section 1021.5 is not applicable." (*Woodland Hills, supra,* 23 Cal.3d at pp. 934–935.) Thus, *Woodland Hills* omitted "such fees should not in the interest of justice be paid out of the recovery, if any" (§ 1021.5, factor (c)) from the enumerated criteria only because there was no monetary recovery in that case. *Baggett v. Gates* (1982) 32 Cal.3d 128, 142 and footnote 17 [185 Cal.Rptr. 232, 649 P.2d 874], and *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318 and footnote 5 [193 Cal.Rptr. 900, 667 P.2d 704], enumerated the same three statutory criteria under section 1021.5, again stating that factor (c) was inapplicable only because there was no monetary recovery. (See *Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1355 [39 Cal.Rptr.3d 550]; *Planned Parenthood v. Aakhus* (1993) 14 Cal.App.4th 162, 169, fn. 3 [17 Cal.Rptr.2d 510]; *Beach Colony II v. California Coastal Com.* (1985) 166 Cal.App.3d 106, 110–111 & fn. 3 [212 Cal.Rptr. 485]; *State of California v. County of Santa Clara* (1983) 142 Cal.App.3d 608, 615 & fn. 3 [191 Cal.Rptr. 204]; *Slayton v. Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, 545 [207 Cal.Rptr. 705].)

intended to grant the trial court the discretion to determine in what circumstances fees should be paid by the opposing party rather than from the recovery. The court must exercise its discretion in accordance with the statutory objective of encouraging public interest litigation that would not be pursued absent the prospect of a fee award. (See *Graham v. DaimlerChrysler Corp., supra,* 34 Cal.4th at p. 565.)

We believe that the "interest of justice" inquiry under section 1021.5, factor (c) requires a value judgment, similar to that involved in evaluating the "financial burden of private enforcement" (*id.,* factor (b)), as to the desirability of offering the bounty of a fee award in order to encourage similar litigation. (Cf. *Whitley, supra,* 50 Cal.4th at p. 1216.) In some circumstances, the "financial burden of private enforcement" inquiry may encompass the "interest of justice" inquiry. (*Beasley v. Wells Fargo Bank, supra,* 235 Cal.App.3d at pp. 1413–1417.)

### c. *Plaintiffs Have Shown No Abuse of Discretion in the Fee Apportionment*

Plaintiffs contend the trial court abused its discretion by awarding plaintiffs' counsel only 60 percent of their reasonable attorney fees under section 1021.5 and by requiring plaintiffs to pay 40 percent of the fees, amounting to approximately 50 percent of their class restitution fund. They argue that 50 percent is an inordinately large portion of their monetary recovery to require them to bear in attorney fees and that "in the interest of justice" (§ 1021.5, factor (c)) a larger percentage of their reasonable attorney fees should be paid by the city rather than paid out of their recovery.[13] We conclude that plaintiffs have shown no abuse of discretion.

The term "recovery" as used in section 1021.5, factor (c) suggests a monetary recovery. Although plaintiffs' monetary recovery is limited to $464,218, plus additional prejudgment interest resulting from our decision, they have also received the benefit of reducing by $896,185 the amount owed to the city by class members who as of the date of the judgment had not paid their bills in full. The trial court regarded plaintiffs' claim that class members had received the full benefit of $896,185 in debt reduction as "uncertain," stating in the attorney fee order: "There is, however, no evidence that the City would have attempted to collect on these fees even if they had won the lawsuit or that the individuals would have actually paid those fees—i.e., some of the fees may be non-collectible, some might have paid reduced cost, etc. Thus, due to the uncertain nature of this claim, the Court considers a 20% fee to be a reasonable contingency fee."

---

[13] Plaintiffs do not challenge the apportionment based on their reasonably expected financial benefits, so we need not review the trial court's decision with respect to the "financial burden of private enforcement" (§ 1021.5, factor (b)).

The application of a 20 percent contingency fee to the debt reduction amount in lieu of the 40 percent contingency fee applied to the monetary recovery, in comparing a contingency fee with the lodestar fees, suggests that the trial court discounted the value of the $896,185 in debt reduction by 50 percent. Plaintiffs do not argue on appeal that the value of the debt reduction is less than 50 percent of $896,185, or $448,093. In the trial court, they argued that the value of the debt reduction was the full $896,185.

■ We believe that in determining the amount of attorney fees that a plaintiff reasonably could be expected to bear for purposes of apportioning a fee award under section 1021.5, a court should consider not only the actual or expected monetary recovery but the full monetary value of the judgment. This is apparent in connection with the "financial burden of private enforcement" inquiry. The reasonably expected financial benefits of the litigation are not necessarily limited to an affirmative monetary recovery. Similarly, we believe that a court considering whether some or all of the fees in the interest of justice should be paid by the opposing party or from the recovery should consider not only the actual monetary recovery but also any other direct financial benefits provided to the plaintiff by the judgment. Absent a showing to the contrary, we presume that the trial court did so here.

The monetary value of the judgment to plaintiffs includes the $464,218 monetary recovery and debt reduction impliedly valued by the trial court at $448,093, for a total monetary value to plaintiffs of $912,311. The judgment requires plaintiffs to bear $231,076 in attorney fees, or approximately 25 percent of the value of the judgment. We believe that an attorney fee award payable by plaintiffs in the amount of 25 percent of the value of the judgment is within the range of typical attorney fee awards and that the trial court's finding that plaintiffs could reasonably be expected to bear that amount was not an abuse of discretion.

3. *The Denial of Attorney and Paralegal Fees for Time Characterized by the City as Administrative Was Error*

The trial court reduced plaintiffs' fee request by $38,476 for administrative tasks and an additional $18,594 for duplicative work, stating: "The Court has eliminated the administrative sums per the chart attached to the declaration of Gerald G. Knapton. His declaration also contains a chart of duplicative sums in the amount of $37,189. The Court has reviewed the chart and finds that 50% of that amount ($18,594) should be deducted from the claim fees."

The chart attached to the Knapton declaration listed billing entries coded by Knapton as "administrative." Most of those entries stated two or three tasks including both attorney or paralegal work that ordinarily would be compensable, such as drafting correspondence, discovery requests or law and motion documents, and tasks that could be characterized as noncompensable administrative tasks, such as filing and serving documents. For each such billing entry, Knapton designated the entire entry and all of the time included as "administrative," without explaining why some portion of the entry should not be compensable. The trial court agreed and also failed to explain why some portion of the time should not be compensable.

■ The trial court is in the best position to determine the reasonable value of professional services rendered in a case before it and has broad discretion to determine the reasonable amount of an attorney fee award. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1095–1096 [95 Cal.Rptr.2d 198, 997 P.2d 511].) A court abuses its discretion only if there is no reasonable basis for its decision under the governing law and the reviewing court concludes that the court clearly erred. (*Ryan v. California Interscholastic Federation* (2001) 94 Cal.App.4th 1033, 1044 [114 Cal.Rptr.2d 787].)

We conclude that there was no reasonable basis for the trial court to deny compensation for that part of the attorney and paralegal time designated by Knapton as administrative involving legal work that ordinarily is compensable. The court offered no reason to deny compensation for those billing entries apart from Knapton's facially overbroad conclusion that all of the time in those entries was administrative. On remand, the court should determine what part of those entries involved compensable attorney or paralegal work and award fees accordingly.

4. *Plaintiffs Have Shown No Error in Allowing the City to Retain Unclaimed Funds*

The judgment states that the city will retain amounts due class members who cannot be located and amounts that are unclaimed and unpaid after a period of time. Plaintiffs argue that unclaimed funds in a class action should be distributed to class members or, failing that, to other persons or entities in furtherance of the interests of the class. They argue that there is no authority for the city to retain unclaimed class funds in which it has no legal or equitable interest.

■ Code of Civil Procedure section 384 states that the unpaid residue of the amount payable to class members in a class action, meaning the difference between the total amount to which the class members are entitled and

the amount they are actually paid, must be paid "to nonprofit organizations or foundations to support projects that will benefit the class or similarly situated persons, or that promote the law consistent with the objectives and purposes of the underlying cause of action, to child advocacy programs, or to nonprofit organizations providing civil legal services to the indigent." (*Id.*, subd. (b).) This requirement, however, is expressly inapplicable in a class action against a public entity or public employee. (*Id.*, subd. (c).) Code of Civil Procedure section 384 therefore does not preclude the retention of the unpaid residue by a public entity, but instead by establishing an exception for public entities seems to contemplate the possibility of such a retention.[14]

Plaintiffs cite no authority for the proposition that a public entity defendant in a class action cannot retain unclaimed funds. *State of California v. Levi Strauss & Co.* (1986) 41 Cal.3d 460 [224 Cal.Rptr. 605, 715 P.2d 564], cited by plaintiffs, did not consider the question. The California Supreme Court in that case, which did not involve a public entity defendant, noted the "principal methods" to dispose of the unpaid residue in a consumer class action, including "a rollback of the defendant's prices, escheat to a governmental body for either specified or general purposes, establishment of a consumer trust fund, and claimant fund sharing." (*Id.* at p. 473.) The court stated, "All of these methods promote the policies of disgorgement and deterrence by ensuring that the residue of the recovery does not revert to the wrongdoer." (*Ibid.*) *Levi Strauss & Co.*, however, did not consider whether reversion to a public entity defendant may be appropriate in some cases and therefore is not on point.

The federal opinions cited by plaintiffs similarly did not involve public entity defendants and are not persuasive on this point. We conclude that plaintiffs have shown no abuse of discretion in this regard.

## DISPOSITION

The judgment is reversed as to the award of prejudgment interest with directions to the trial court to conduct further proceedings to determine the amount of prejudgment interest to which plaintiffs are entitled in accordance with this opinion. The judgment is also reversed as to the attorney fee award

---

[14] The exception in Code of Civil Procedure section 384, subdivision (c) for class actions against a public entity or public employee was added in 1994 as an emergency measure. (Stats. 1994, ch. 237, §§ 1–2, pp. 1818–1819.) The legislative history indicates that the bill was motivated by a concern that the then-existing statute could have a potentially adverse financial impact on the state because it would prevent the state as a defendant in class action lawsuits from retaining unclaimed funds. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2105 (1993–1994 Reg. Sess.) as amended Apr. 13, 1994, p. 2.)

with directions to the trial court to determine what part of the claimed attorney and paralegal fees for work previously characterized as "administrative" is compensable. The judgment is affirmed in all other respects. Each party is to bear its own costs on appeal.

Klein, P. J., and Aldrich, J., concurred.

A petition for a rehearing was denied May 8, 2012.