TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

XAVIER BECERRA
Attorney General

_____

|  |  |  |
|---|---|---|
| OPINION | : | No. 17-101 |
|  | : |  |
| of | : | March 3, 2020 |
|  | : |  |
| XAVIER BECERRA | : |  |
| Attorney General | : |  |
|  | : |  |
| CATHERINE BIDART | : |  |
| Deputy Attorney General | : |  |
|  | : |  |

_____


MARTIN D. KOCZANOWICZ, CITY ATTORNEY FOR THE CITY OF MORENO VALLEY, has requested an opinion on the following questions:

1. Under Government Code sections 53200–53210, may a city council lawfully provide its members with health and welfare benefits through a plan into which the city pays a flat rate plus a percentage of the average of the salaries of selected managerial employees, where the extra percentage is not made available to other city officers and employees?

2. May an unintentional violation of Government Code sections 53200–53210 lead to criminal penalties?

3. If a city council provides its own members with health and welfare benefits that exceed what is allowed under Government Code sections 53200–53210, what recourse does the city have to recoup its overpayment, including interest on that overpayment?

1

17-101

4. May a city council approve a settlement agreement between the city and a current city council member to repay the city for the excessive health and welfare benefits received—including an agreement that waives some or all of the city's overpayment—if that member is recused from voting on the agreement?

CONCLUSIONS

1. No, under Government Code sections 53200–53210, a city may not lawfully provide its city council members with health and welfare benefits through a plan into which the city pays a flat rate plus a percentage of the average of the salaries of selected managerial employees, where the extra percentage is not made available to other city officers and employees.

2. A violation of Government Code sections 53200–53210 that is unintentional could lead to criminal penalties only if it resulted from a failure to ascertain the relevant legal obligations that was so unreasonable as to constitute criminal negligence.

3. The city may seek to recoup its overpayment of city council members' health and welfare benefits, including interest, in a civil action against those who received or approved the excessive benefits.

4. A city council may approve a settlement agreement between the city and a current city council member to repay the city for the excessive health and welfare benefits received if that member is recused from voting on the agreement *and* the other "remote interest" requirements of Government Code section 1091, subdivision (b)(15) are met. Although a city has discretion to waive a claim in part or in full if doubt or a dispute exists as to the claim's validity or amount, a city may not waive a valid claim of an indisputable amount because doing so would result in an unconstitutional gift of public funds.

ANALYSIS

This opinion addresses a set of related questions arising from a city council's decision to grant its members a specialized package of health and welfare benefits. As described to us, the members' benefit plan consisted of city contributions toward a "cafeteria plan"[1] from which members could purchase health-related benefits. For the city council members' plan, the city provided contributions at a flat rate plus a percentage of the average of the salaries of selected city managerial employees, whose salaries were

_____

[1] A cafeteria plan is so called "because the beneficiary can choose from a selection of benefits as would a cafeteria patron choosing food items." (*Sturgeon v. County of Los Angeles* (2015) 242 Cal.App.4th 1437, 1441, fn. 3.)

higher than that of the city council members themselves.[2]  The benefit plans that the city made available to other city employees and officers did not provide the same level of benefits.  Instead, the other plans provided contributions at the flat rate alone, or the flat rate plus a percentage of the employee's or officer's own salary.  The facts as presented to us indicate that the measure adopting this way of calculating the contributions for council members was presented to the city council by the then city manager, who indicated that the proposal had been reviewed by the then city attorney and complied with certain requirements of state law.  The possible violation addressed by the present request was discovered several years later.

The first question to be considered is whether the subject benefit plan was in compliance with the state statutes governing employment benefits for local legislative bodies.[3]  If not, then could unintentional violations of the governing laws result in criminal penalties?  What recourse would the city have to recoup an overpayment of benefits, and would interest be available?  And, finally, could the city approve a settlement agreement— including one that waived some or all of the overpayment—with a current city council member who was subject to the agreement, if that member were recused from the vote?  We address each of these questions in turn below.

**Question 1**

We first consider whether a specialized benefit plan like the one described here is permitted under the relevant statutes.  We conclude that it is not permitted.

Government Code sections 53200–53210 regulate the provision of health and welfare benefits to officers and employees of local agencies, including cities.[4]  Health and welfare benefits refer to "hospital, medical, surgical, disability, legal expense or related benefits including, but not limited to, medical, dental, life, legal expense, and income protection insurance or benefits, whether provided on an insurance or a service basis," as well as certain group life insurance.[5]  A city may provide such benefits to its officers and

---

[2] We are informed the benefits equaled 6 percent of the average of the salaries of the Public Works Director, Community Development Director, Economic Development Director, Administrative Services Director, Finance Director, and Parks and Community Services Director.

[3] Gov. Code, §§ 53200–53210.

[4] For purposes of the statutory scheme, a city is a local agency.  (Gov. Code, § 53200, subd. (a).)

[5] Gov. Code § 53200, subd. (d).

3

employees, including council members, subject to certain limits.[6]  These implement an express statutory purpose to uniformly limit local legislators' benefits.[7]

One limit, set out in Government Code section 53202.3, requires that when local legislators craft a benefit plan for themselves, they must share the same benefit plan widely with others: "All plans, policies or other documents used to effectuate the purposes of this article shall provide benefits for large numbers of employees."[8]

A second limit, set out in Government Code section 53208.5, subdivision (b) provides:

> Notwithstanding any other provision of law, the health and welfare benefits of any member of a legislative body of any city, including a charter city, . . . or any other political subdivision of the state shall be no greater than that received by nonsafety employees of that public agency.  In the case of agencies with different benefit structures, the benefits of members of the legislative body shall not be greater than the most generous schedule of benefits being received by any category of nonsafety employees.[9]

Here, the members' benefits were based on a flat rate plus a percentage of the average of the salaries of some of the city's executive managerial employees, whose salaries exceeded those of the city council members themselves.  This additional percentage was not provided to non-council members.  Instead, all other city officer and employee benefits were based on the flat rate alone, or the flat rate plus a percentage of the employee's own salary.

---

[6] Gov. Code, § 53201.  Government Code section 1090, which prohibits financial conflicts of interest in making public contracts, does not prohibit local legislators from providing themselves with benefits generally. (Gov. Code, § 53208 ["Notwithstanding any statutory limitation upon compensation or statutory restriction relating to interest in contracts entered into by any local agency, any member of a legislative body may participate in any plan of health and welfare benefits permitted by this article"].)

[7] Gov. Code, § 53208.5, subd. (a) (legislative findings and declarations).

[8] Gov. Code, § 53202.3.

[9] Gov. Code, § 53208.5, subd. (b).

17-101

The use of an enriched benefit formula for council members is contrary to Government Code section 53208.5, subdivision (b), which states that local legislators' benefits "shall not be greater than the most generous schedule of benefits being received by any category of nonsafety employees."[10]  In addition, a failure to offer the same plan to "large numbers of employees" is contrary to Government Code section 53202.3.[11]

Thus we conclude that, under Government Code sections 53200–53210, a city may not provide its city council members with health and welfare benefits through a plan into which the city pays a flat rate plus a percentage of the average of the salaries of selected managerial employees, where the extra percentage is not made available to other city officers and employees.

**Question 2**

Question 2 asks whether criminal penalties could result from an unintentional violation of Government Code sections 53200–53210.  We conclude that criminal penalties could only result from such a violation if it met the high standard for criminal negligence.

We have previously opined that a willful violation of sections 53200–53210 may be punishable as a misdemeanor, and may subject the official to removal from office under

---

[10] See Gov. Code, § 53208.5, subd. (b).  The enriched formula used an average of six higher-paid executive managerial employee salaries (see note 2, ante) instead of the members' own individual salaries.  Whether those six higher-paid executive managerial employees would themselves comprise a "category of nonsafety employees" for purposes of section 53208.5, subdivision (b), is unclear.  Even if they did, however, it could not reasonably be said that they had a similarly "generous schedule of benefits" to the city council members, because the executive managerial employees' benefits were based on their own individual salaries, while the city council members' benefits were based on the average salaries of a separate group of higher-paid employees.

[11] See Gov. Code, § 53202.3.  The governing statutory scheme does not define "*large* numbers of employees" as used in Government Code section 53202.3.  (Gov. Code, § 53202.3, italics added; but see Gov. Code, § 53200, subd. (e) ["'Employees' or 'officers and employees' mean all employees and officers, including members of the legislative body, who are eligible under the terms of any plan of health and welfare benefits adopted by a local agency pursuant to this article"].)  Under any reasonable interpretation of that term, however, a benefits plan offered only to five council members and not to any other city employees would not qualify as a plan that "provide[s] benefits for large numbers of employees."

5

Government Code section 3060 et seq.[12] The question here, though, is about an unintentional violation, not a willful one.[13] We conclude that an unintentional violation could in theory lead to criminal liability as a misappropriation of public funds, but only if the violation resulted from conduct rising to the level of "criminal negligence." Penal Code section 424, subdivision (a), states:

> Each officer of this state, or of any county, city, town, or district of this state, and every other person charged with the receipt, safekeeping, transfer, or disbursement of public moneys, who . . . [w]ithout authority of law, appropriates the same, or any portion thereof, to his or her own use, or to the use of another; . . . [i]s punishable by imprisonment in the state prison for two, three, or four years, and is disqualified from holding any office in this state.[14]

A city council member's act of authorizing the provision of public benefits could constitute a disbursement of public moneys within the meaning of Penal Code section 424.[15] Doing so without legal authority would amount to a crime, however, only if the member had the requisite mental state. The California Supreme Court has repeatedly stated

---

[12] 83 Ops.Cal.Atty.Gen. 124, 128–129 (2000); see Gov. Code, §§ 1222 ("willful omission to perform any duty enjoined by law upon any public officer, or person holding any public trust or employment, where no special provision is made for the punishment of such delinquency, is punishable as a misdemeanor") & 3060 et seq. (providing for removal of official for "willful or corrupt misconduct in office").

[13] The prohibition against conflicts of interest in public contracts (Gov. Code § 1090) provides for criminal penalties for willful violations (Gov. Code, § 1097), not unintentional ones.

[14] Pen. Code, § 424, subd. (a).

[15] See *People v. Hubbard* (2016) 63 Cal.4th 378, 394 (holding that "an individual is 'charged with the receipt, safekeeping, transfer, or disbursement of public moneys' under the meaning of section 424 so long as he or she exercises a degree of material control over public funds that amounts to being 'charged with' such authority"); see also *People v. Battin* (1978) 77 Cal.App.3d 635, 649–650 (supervisor's certification of time sheets from which county staff was paid constituted disbursement of public monies under Penal Code section 424); *Webb v. Superior Court* (1988) 202 Cal.App.3d 872, 887 ("that petitioner was not directly, in his job description or the common responsibilities of his position, charged with receipt, safekeeping, transfer or disbursement of public funds does not necessarily preclude a prosecution under section 424. It is sufficient if the public official controls public funds so as to cause their expenditure for nonpublic purposes").

that to be convicted under Penal Code section 424, an official must know *or be criminally negligent in not knowing* that he or she lacks legal authority.[16]

Criminal negligence is not ordinary negligence, but is "aggravated, culpable, gross, or reckless."[17] It requires "a higher degree of negligence than is required to establish negligent default on a mere civil issue."[18] An official entrusted with control of public funds would generally not be criminally liable for misappropriation if he or she believed the action to be legally authorized, unless that belief was "objectively unreasonable, i.e., [was] the product of criminal negligence in ascertaining legal obligations."[19]

Thus, in response to Question 2, we conclude that an unintentional violation of Government Code sections 53200–53210 could lead to criminal penalties only if it were criminally negligent.

**Question 3**

We next consider whether the city may recoup its overpayments from those who received or approved excessive benefits and, if so, whether interest is available.[20]

An act that is in excess of what is legally permitted is *ultra vires*—i.e., outside of the actor's authority and beyond his or her legal discretion.[21] Therefore if a city adopted a resolution to provide benefits that were not in compliance with Government Code sections 53200–53210, that resolution would be void.[22] A city may seek repayment of excess

---

[16] E.g., *People v. Hubbard*, *supra*, 63 Cal.4th at p. 397; *People v. Bradley* (2012) 208 Cal.App.4th 64, 78; *Stark v. Superior Court* (2011) 52 Cal.4th 368, 395–396.

[17] *Stark v. Superior Court*, *supra*, 52 Cal.4th at p. 399.

[18] *Ibid*., internal quotation marks omitted.

[19] *Ibid*.

[20] We address only the question we have been asked: whether a city may recoup its "overpayment" under the circumstances described to us. We understand that "overpayment" refers to the amount in excess of what could have been provided lawfully. We have not been asked to address, nor do we, whether a city could recoup anything beyond that amount on the ground that the resolution was void.

[21] See *People ex rel. Harris v. Rizzo* (2013) 214 Cal.App.4th 921, 941–944; *Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1086 (where public official's authority to act in particular area derives wholly from statute, the scope of that authority is measured by terms of the governing statute).

[22] *Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1150 ("Local

7

compensation through, among other means, a civil action for waste[23] or to declare void a resolution purporting to approve excess benefits.[24] Those who approved the excessive benefits would be liable for the unlawful expenditures, but only if they failed to use due care or reasonable diligence in approving the excess benefits.[25] Those who received the excessive benefits would be liable to the city for repayment,[26] and no immunity would be available for receiving excess benefits in good faith.[27]

In addition, a city could seek to recover the unlawful benefits through a cause of action under Government Code section 1090, which prohibits conflicts of interest in public contracts. A cause of action under section 1090 could seek to recover from members who approved benefits in which they had a prohibited financial interest and from members who received the benefits.[28] Finally, a city could also seek to recover against those who approved the unauthorized expenditures under a cause of action for a breach of fiduciary duty.[29]

Lastly, interest would be recoverable on a city's claim for damages. By statute, prejudgment interest would apply to damages if their amount were certain or capable of

---

legislation in conflict with general law is void," quotation marks and citations omitted); 83 Ops.Cal.Atty.Gen. 14, 19 (2000) ("Where local legislation conflicts with general law, it is void").

[23] *People ex rel. Harris v. Rizzo*, *supra*, 214 Cal.App.4th at p. 945. Although "waste does not encompass the great majority of governmental outlays of money . . . nor does it apply to the vast majority of discretionary decisions made by state and local units of government" (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 482–483), an illegal expenditure of public funds is waste (*Humane Soc. of U.S. v. State Bd. of Equalization* (2007) 152 Cal.App.4th 349, 356).

[24] *People ex rel. Harris v. Rizzo*, *supra*, 214 Cal.App.4th at pp. 941, 945.

[25] *People ex rel. Harris v. Rizzo*, *supra*, 214 Cal.App.4th at pp. 942–943, citing *Stanson v. Mott* (1976) 17 Cal.3d 206; see *id*., p. 945; see also 83 Ops.Cal.Atty.Gen. 124, *supra*.

[26] *People ex rel. Harris v. Rizzo*, *supra*, 214 Cal.App.4th at pp. 935–936, 942.

[27] *Stevens v. Geduldig* (1986) 42 Cal.3d 24, 35; *Aebli v. Board of Ed. of City and County of San Francisco* (1944) 62 Cal.App.2d 706, 727–728.

[28] See Gov. Code, § 1090 et seq.; *Los Angeles Memorial Coliseum Com. v. Insomniac, Inc.* (2015) 233 Cal.App.4th 803, 822–824); *People ex rel. Harris v. Rizzo*, *supra*, 214 Cal.App.4th at pp. 948–949 & fn. 29; *Thomson v. Call* (1985) 38 Cal.3d 633, 645–652.

[29] *People ex rel. Harris v. Rizzo*, *supra*, 214 Cal.App.4th at pp. 950–951.

calculation.[30]  Post-judgment interest would apply on any unpaid principal of a judgment from its date of entry.[31]

So, in response to Question 3, we conclude that a city may seek to recoup its overpayment of city council members' health and welfare benefits, including interest, by a cause of action against those who received or approved the excessive benefits.

**Question 4**

Question 4 asks whether a city council may enter into a settlement agreement with a sitting council member who received or approved excess benefits.  We conclude that the parties may enter into such an agreement if they observe requirements for disclosure and recusal set forth in Government Code section 1091, subdivision (b)(15), which governs this situation.

Government Code section 1090 generally prohibits a city council from making a contract[32] (including a litigation settlement agreement[33]) if a member of the council has a financial interest in the contract.[34]  Some financial interests are remote enough not to be absolutely prohibited.[35]  A city council may make a contract despite a member's remote interest if: "(1) the officer in question discloses his or her financial interest in the contract to the public agency, (2) such interest is noted in the entity's official records, and (3) the officer abstains from any participation in the making of the contract."[36]

---

[30] Civil Code, § 3287, subd. (a); *Leaf v. Phil Rauch, Inc.* (1975) 47 Cal.App.3d 371, 376 (prejudgment interest is matter of right where damages-certainty requirement in Civil Code section 3287 is met); see *Collins v. City of Los Angeles* (2012) 205 Cal.App.4th 140, 150, fn. 7 (surveying cases).

[31] Code Civ. Proc., §§ 685.010–685.020.

[32] The "making of a contract" includes "planning, preliminary discussions, compromises, drawing of plans and specifications and solicitation of bids." (*Stigall v. City of Taft* (1962) 58 Cal.2d 565, 571.)

[33] *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 810–811 (settlement agreement is a contract).

[34] Gov. Code, § 1090, subd. (a).

[35] See Gov. Code, § 1091, subd. (a).

[36] 89 Ops.Cal.Atty.Gen. 217, 220 (2006).

9

A public official has a remote interest in a settlement agreement where he or she is "a party to litigation involving the body or board of which the officer is a member in connection with an agreement" and the following requirements are met:

> (A) The agreement is entered into as part of a settlement of litigation in which the body or board is represented by legal counsel.
> (B) After a review of the merits of the agreement and other relevant facts and circumstances, a court of competent jurisdiction finds that the agreement serves the public interest.
> (C) The interested member has recused himself or herself from all participation, direct or indirect, in the making of the agreement on behalf of the body or board.[37]

In entering into such a settlement, may a city waive a reimbursement obligation for excess benefits? "[G]enerally speaking, a municipality has the power to settle and compromise claims in its favor or against it where there is a bona fide reasonable doubt or dispute as to the validity thereof or the amount due with respect thereto."[38] On the other hand, a city may not waive a repayment obligation if the waiver constitutes a gift of public funds contrary to section six of article XVI of the California Constitution.[39]

The threshold question in determining whether an expenditure (including the failure to collect money owed) constitutes a gift of public funds is whether the funds would be used for a public purpose.[40] If the city were entitled to reimbursement in an amount certain, but waived its right to receive all or part of those funds without good reason, the amount retained by the council member and not returned to the city could be a gift. On the other hand, if there were consideration for waiving or compromising the reimbursement amount—for instance, if there were a legitimate question about the validity of the debt or the amount owed—then the settlement could serve a valid public purpose.[41]

---

[37] Gov. Code, § 1091, subd. (b)(15). See also Sen. Jud. Comm., analysis of Assem. Bill No. 2801 (2007–2008 Reg. Sess.), as amended May 27, 2008 (remote interest exception for party to litigation should be added in light of 91 Ops.Cal.Atty.Gen. 1 (2008) and 86 Ops.Cal.Atty.Gen. 142 (2003)).

[38] *Whitson v. City of Long Beach* (1962) 200 Cal.App.2d 486, 505.

[39] Cal. Const., art. XVI, § 6.

[40] *Jordan v. California Dept. of Motor Vehicles* (2002) 100 Cal.App.4th 431, 450.

[41] *Ibid*. ("The settlement of a good faith dispute between the State and a private party is an appropriate use of public funds and not a gift because the relinquishment of a colorable legal claim in return for settlement funds is good consideration and establishes a valid

Thus, in response to Question 4, we conclude that a city council may approve a settlement agreement between the city and a current city council member to repay the city for the excessive health and welfare benefits received if that member is recused from voting on the agreement *and* the other "remote interest" requirements of Government Code section 1091, subdivision (b)(15) are met. Although a city has discretion to waive a claim in part or in full if some real doubt or dispute exists as to the claim's validity or amount, a city may not waive a valid claim of an indisputable amount because doing so would result in an unconstitutional gift of public funds.

*****

---

public purpose. . . . The compromise of a wholly invalid claim, however, is inadequate consideration and the expenditure of public funds for such a claim serves no public purpose and violates the gift clause"). In an analogous situation, the court of appeal held that a city's retirement board would make an unconstitutional gift of public funds if its failure to enforce an ordinance would result in an overpayment of retirement benefits. (*Atchley v. City of Fresno* (1984) 151 Cal.App.3d 635, 651.)

11